Case number 166530 Owensboro Health Inc v. HHS et al. Oral argument not to exceed 15 minutes per side. Ms. Snell for the appellate. Come on up. Your Honor, I have reserved one minute. Very well. May it please the court, counsel, good morning. This issue involves the occupational mix adjustment to the wage index. And it concerns the exclusion of nursing personnel from the calculation. And I don't mean just put in a classification. I mean excluded from the computation. You're talking about these technicians, right? Correct. And they were put in the all other occupations category? All other occupations category, and that means they were excluded. Okay. To be in that category, it's not simply, and the district court may have missed this point, but it's not simply being put in a classification. It's being excluded. Well, it's a classification that I guess doesn't count then. Correct. That's another way to put it. It wasn't the actual, I think we're looking at reasonableness here. So I was struggling with how many people we have involved. And this is the group that there was a shrinking of the number of categories from like 20 categories in which you could place people. And in that, didn't the government decide that this small group that constituted less than 4% of the employees then fell into this other occupations category? Is that your understanding? Because my understanding is it's a 4% category. That is a little confusing to me. I do know, and this would be significant to my client, that the effect of this exclusion is about $575,000. Because it was the surgical. That's part of my question. It's a fair amount of money. It is a fair amount of money. And there's no question that, I mean, these were surgical technicians. They were supervised by the manager of paraoperative services with immediate direction of the operating physician, required by the operating physician to do things, incident procedures. Mental health technicians do a variety of things. It's delegated by the registered nurse. They assist patients when needed, personal hygiene, et cetera. Cath lab technicians prepare patients for testing and assist professional staff with monitoring, connecting heart, blood pressure, et cetera. So all of these are nurse extenders providing acute care hospital services related to the inpatient prospective payment system, IPS, IPPS. But, I mean, your argument is that these technicians should have been classified as under the orderlies subcategory. Not under the orderlies, but certainly under the nursing categories. Well, I mean, your argument, they have specific subcategories, and your argument is that it should have been in the orderlies category. Aides, orderlies, and assistants. It seems like a bit of an odd fit, doesn't it? Pardon? I'm sorry. It seems like a bit of an odd fit. Well, it fit from a wage level standpoint. I mean, and that's why it was. From a description of the work the person does, it seems like an odd fit. They did some base care patient services. But ultimately it was added to the LPN, correct? Yes, in 2008. In 2008 it was. I understand that that would be a frustrating concern for your hospital, because it seems like you raised this issue, and the answer was, here's how we're going to do it. We're going to put them in another occupation, this 4% small category. And then after everything was done, it's like they listened to what you said. They didn't place them in the orderlies category, but they placed them in the LPN category. So I get that that's a frustrating position to be in and a costly one. The question is whether the steps that the government took along the way were reasonable and appropriate ways to try to meet the Bellevue-imposed time schedule and work through this tradeoff between asking hospitals to spend a lot of time categorizing people in up to 20 or more categories, honing that down to a smaller group of categories, and then ultimately hearing what you said and moving some of these technicians into the LPN category. The question is, was that reasonable? Did they act appropriately in working their way through the system, having heard what you said and bought it and moved them into a corrected category later? But somewhere in that transition, your hospital got hurt. So the question we have to ask is, was it unreasonable for them to take those steps along the way that ended in the problem for you? It was very unreasonable. It was arbitrary, and it violated the statute. If I could turn to the statute that contains the wage index, which is 14 U.S.C., it's a mouthful, 1395 W.W.D.3Ei, and the first two sentences of that concern the wage index that this court spent a lot of time with in the atrium decision. Atrium does not get to the occupational mix adjustment, which is in the last sentence. If you look at that sentence read in context of the whole IPPS scheme, it's not less than, it's the last sentence of 1395, and it's the specific OMA language. It says, not less than every three years, the secretary, through such survey or otherwise, shall measure the earnings and paid hours of employment by occupational category and shall exclude, this is the only exclusion, data with respect to wages and related costs in furnishing skilled nursing facility services. Now, that's nursing homes. And that's because that's covered by another statute. Correct. Absolutely. It doesn't mean everything else shall be included. We would read it that way because the whole, well, the OMA was designed to make hospitals more efficient. Well, I mean, that may be a putative design, but as a matter of reading the statute, I don't at all see the inference there that because they're excluding one type of service for the reason that it's covered by a different statute altogether, that the agency now is just totally bound to include every other kind of service in its calculation. Including it would be consistent with the congressional intent, I mean, to sweep. Well, the intent, usually, I mean, we start by the words, you know, and they don't seem to support the inference that you're suggesting here. The Bellevue decision, when they're talking about the, and this, I think, relates to your question. I hope it does. But in Bellevue, I mean, the OMA was very new at that point. And as far as I know, and in terms of what the parties have cited and what I've seen, Bellevue is one of few or maybe the only one of the circuit court reported decisions that specifically tackles the OMA. And in that case, they were just ignoring the deadlines. And the court called it a continuing failure. I mean, that's just, you know, that's history. I mean, it's just not relevant. It's history, but it kind of explains what happens, because that was sort of the genesis of what happened here. In Bellevue, they set the deadline. They were on the book of Isaiah rather than the book of Genesis. Well, not quite that far back. We understand that it did have an impact, but the question becomes whether the impact might suggest that what CMS did was reasonable, because they had intended to phase it in and begin with the 10 percent group. And Bellevue said, no, you need to do your job, CMS. Go out there, figure it out, and do it at 100 percent. That was a very, very limited time frame they were given in which to implement at 100 percent level. So explain to me why that imposed time frame doesn't, in fact, undercut your claim of unreasonableness in the way CMS took the necessary steps in order to implement within the required time frame. Well, the internal communications at the time when this was going on, they recognized that it was arbitrary in and of itself. I mean, there were e-mails and communications with my client when they were considering issuing a clarification to expand the number of personnel. They realized there were other types of personnel that were similar to nurses that were being excluded. Why is it not reasonable agency action to decide how to use the occupational mix for their purposes of setting the wage index? Explain to me how that's unreasonable. They figured out we're going to cull down the 20 categories, we're going to make it a smaller group, and here is this outstanding question. We're going to send more instructions, and we're going to say to all of these employed groups that go out and collect and assist in performing this, here's where you're going to put those people, and that's what the instructions said. So help me understand why that was an unreasonable action by the agency to implement the statutory requirements in the time frame designated. Well, they had six years or five or six years to do it, and it does. It is history, and we are at this spot now where you're saying you should have included them in this category, and they're saying, no, our instructions are telling everybody involved in our system, here is where those people go, it's the orderlies, the orderlies is what you wanted, and they said, no, they're such a small group, we're going to place them in the 4% category, which I get means that they were technically not calculated. But I'm struggling with the oversight here is depending upon whether the agency is interpreting the statutes, Chevron deference, or whether they are interpreting their own regulatory activities, in both of those situations you have deference, maybe a different level, but you have deference to what the agency did. So I don't think anybody's disputing the impact this had, but I'm asking you to tell me what it is in those steps that took them outside the deference standard that is granted to their activities. Well, I think it does go to fully implementing the statute. I know that Judge Catledge doesn't agree with that. But I think if you're looking at something to make hospitals more efficient, and you're not taking the whole occupational mix in account for all those wages that relate to the people providing the nursing services, then it's defeating the purpose, it's defeating the congressional intent. You know that better than we do. I mean, we're really deep into the interstitial purpose. You would want them to go back to the 20 categories, in effect. That would take everybody into account. Well, in any categories that would fairly take into account the employees that provided the services that are provided. Well, you know, I understand the frustration. The frustration is that these people have a lot more, how do I say this, a lot more training, a lot more experience, and have a much more important strategic position than orderlies do, obviously. Any of us that have spent any time in hospitals would recognize that. But the orderlies are, in fact, the ones that have hands-on nursing care, in a sense, that the technicians don't. And you described it correctly. It's a nursing extension. I get that. But at some point, you have to say, I wouldn't think that putting them with the orderlies would be a reasonable thing to do. In fact, I think they ended up, did you say, Judge Stranch, with the LPNs? Yes. And that's probably where they should have been all along. But in the meantime, everybody lost on this deal for a while. Except for the 10 hospitals. The 10 hospitals. Well, that was a mistake. That was a mistake. That wasn't something that the agency said was a mistake, but it was the fiscal intermediary putting these people in the category that we thought they should be in. Sure, but they say that was a mistake. One question I'm dying to ask you, if I may, just real quick, is would you concede that CMS directed hospitals to classify these sorts of technicians as in the all other occupations category, as a factual matter? They did. Okay. They did, in supplemental clarifications. So they directed hospitals to do that. Your hospital did not do that. Meanwhile, the record would suggest maybe 4,900 other hospitals did do that. And I'm not really sure, you know, you're saying that you're entitled to a mistake? Well, I'm not sure that her client, I think they did comply, and they therefore lost money. Isn't that correct? Yes, we lost money. But our position all along was that they should have been in a different category. But you classified these as orderlies, and then the intermediary changed that, right? Correct. And, I mean, I know I totally get your frustration that, you know, there are 10 hospitals in your area or, you know, 45 around the country that were able to get the classification, it would appear mistakenly, that you want. But, I mean, why are you entitled to the benefit of a mistake, basically? We don't think it was a mistake. It was a mistake as measured against CMS's directions, correct? Correct. And they have a lot of discretion on this. That's kind of the difficulty you have. Would the better remedy, it wouldn't help you, well, except unless they had to recalculate everything. But wouldn't you think the remedy would be for you to say, if I don't get it, those 10 hospitals shouldn't get it. Make them give it back. Because that was the error. The error was letting them get it because that fiscal intermediary just didn't do what that fiscal intermediary was told. That's correct. In the Sarasota Shalala case that we cite, where they addressed the failure to apply the uniformity principle in the context of the FICO wages, in that situation they did just remand for the recalculation of that hospital's. Any further questions? All right. Well, thank you very much for your argument. I guess you'll have your one-minute rebuttal. We'll hear from Mr. Ross. Thank you, Your Honors, and may it please the Court. Cason Ross on behalf of the government. I'd like to reframe the issue because plaintiffs seem to characterize Owensboro Health as receiving some sort of exclusion. But, in fact, all of Owensboro Health's technicians were measured according to the statutory language. So if we can turn to the statute, the language addressing the occupational mix adjustment is both the sentence that plaintiff's counsel has quoted, that the secretary shall measure their earnings and paid hours by occupational category. And so that gives the secretary discretion to determine how exactly to measure certain occupations. Yeah, occupational category is not defined, right? Correct, correct. You're kind of off to the races on that. Correct. But then if we look to the beginning of the statute, of this particular subsection, it explains that the secretary shall adjust the proportion of labor costs by a factor as established by the secretary. I don't think Congress could have been any clearer that the amount of discretion entitled to the agency is extraordinarily broad, as this Court explained in the Atrium Medical Center case. And so as this Court was discussing with the plaintiffs, there's an enormous amount of discretion. This is certainly a quintessential interstitial question of implementation, that the agency is able to determine how to measure the occupational mix adjustment and apply it in its expertise in managing health care. I don't think anybody disputes that. The problem is, and why this case is here, is that the whole purpose of the occupational mix was to push down work in a hospital to lower-paid people. And this is what Owensboro says, we did what you suggested. We took work that RNs didn't need to be doing at their higher wage level, and we got a technician who could do that. We honored your purpose. And now, the way the steps have worked through, we're losing $575,000 because we're not able to consider those in an appropriate category where they're calculated. So help me understand. They challenge that as unreasonable. And on many levels, you can see that it is unreasonable. They're doing what they were told. They're trying to comply. And now they're losing $575,000, which to small hospitals in rural America matters. Understandably, Your Honor. One must imagine, however, the breadth of the Medicare program at issue. $575,000 is merely a drop in the bucket, as the agency is concerned. The burn rate is enormous. However, with respect, the intent of the program was not necessarily strictly to quote-unquote push certain employees into lower-cost categories. Rather, it is to measure variations in hospital staffing levels and to basically We understand. It's to be sure that when you have a wage differential between two different areas, you're really measuring the wage differential. You're not measuring hiring decisions. Exactly. Right. So that's what they were trying to do. But it's also that the agency determined that technicians are employed at perhaps relatively similar small rates across all hospitals. The plaintiffs point to janitors, for example, as not being measured in the occupational mix adjustment. Now, that's probably because janitors are employed at relatively the same rate across all hospitals. So there's no need to adjust hospitals' Medicare payment rates based on essentially a control variable. And indeed, that is why the Medicare Payment Advisory Council advised that certain categories should be put in the all-other occupations category for explicitly that reason. The reporting burdens on hospitals alone for complying with the congressional directive is enormous. Well, that's a noticing comment that weren't there a lot of complaints about having to figure out all of these 20 categories. So you're trying to lift the burden on the hospitals of having to report across this huge number of categories. Exactly. And the agency made that cost-benefit decision to most effectively implement the congressional directive against the actual reporting burdens on both the hospitals and the agency itself. So if there are no other questions. I have a question. If, in fact, you wanted to correct a mistake like this, since it's a budget neutral methodology, if you got back money from the 10 who shouldn't have taken it or you provided money to the 11th to join Owensboro into the mistake, would you have to calculate the whole system over again to maintain budget neutrality or not? So, Judge Stranch, those are two separate questions. Okay. Educate me because I'm lost. Absolutely. The Owensboro requests to be the 11th error. As Judge Kethledge pointed out, they want an error in the calculation of their Medicare payment rate. According to their attestations, that would result in a roughly $500,000 change in that particular fiscal year's Medicare payment. If we were to calculate the 10 hospitals so that they would no longer have the error, we have no idea what that change would be to Owensboro Health. Because of how the payment rate would be. It would be almost nothing. But in order for it to impact Owensboro, you would have to recalculate everything. Exactly. Everything. And as the D.C. Circuit found in Methodist Hospitals Sacramento, that would be enormously burdensome on the agency. And, indeed, that is why rates are implemented prospectively so that hospitals can look forward and plan accordingly. So, if there are no further questions, I respectfully request that the court affirm the grant of summary judgment. Thank you, Mr. Ross. Thank you. We'll hear a rebuttal. We have one minute. I just would like to make one point, if I may, just so there's no confusion about it, to be in that all other occupations category is to be excluded. And I would cite the court to the Federal Register, Volume 71, Issue 95, 517.06. That was a point, I think, that the district court missed. And it is a very important point in terms of saying that the occupational mix adjustment is correctly applied. And the agency does its job. All right. Thank you. Thank you. Thank you both. The case will be submitted.